## NEW ENGLAND OIL & PIPE LINE CO. v. BROYLES et al.

No. 10651—Opinion Filed Sept. 5, 1922.

(Syllabus.)

1. **Removal of Causes — Determination of Right—Jurisdiction of State Court.**

A state court is not bound to surrender its jurisdiction by removal to the federal court until a case is made which on the face of the record shows that the petitioner is entitled to such a removal.

2. **Same—Time for Petition.**

A petition for removal filed as soon as the case becomes a removable one,—as, when the action is discontinued against defendants as to whom there is no separable controversy who are citizens of the same state with the plaintiff,—is filed in time, although it is after the time when defendant was required to answer.

3. **Same—Sufficiency of Proceedings.**

Where the defendant, resident of another state, regularly and strictly in accordance with Act Cong. Sept. 24, 1789, c. 20, 1 St. at L. 73, known as the "Judiciary Act," as amended by Act March 3, 1887, c. 373, 24 St. at L. 552, and by Act Aug. 13, 1888, c. 866, 25 St. at L. 433 (U. S. Comp. St. 1901, p. 508), files his petition in the state court for the removal of the cause to the United States Court, and a sufficient bond, which is offered for the approval of the state court, the said court is ipso facto ousted of jurisdiction; and, whether an order for removal is granted or denied by the state court, all further proceedings therein are coram non judice and void.

Error from District Court, Payne County; John P. Hickam, Judge.

Action by W. O. Broyles and another against the New England Oil & Pipe Line Company and others. Petition by defendant named for removal of cause to federal court denied, and it brings error. Reversed and remanded, with directions.

J. P. O'Meara and W. J. Gregg, for plaintiff in error.

Wilcox & Swank, for defendants in error.

JOHNSON, J. This is an appeal from the district court of Payne county; Hon. John P. Hickam, Judge.

On July 2, 1918, the defendants in error, W. O. Broyles and wife, filed their petition in the district court of Payne county, against the New England Oil & Pipe Line Company, the Fortuna Oil Company, the Charleston Oil Company, and D. A. Wickheiser, defendants, alleging substantially that the plaintiffs therein were residents of Payne county, Okla.; that the Charleston Oil Company was a corporation organized and created under the laws of West Virginia; the Fortuna Oil Company, an Oklahoma corporation, and the New England Oil & Pipe Line Company, a foreign corporation, and D. A. Wickheiser, a resident of Norman, Okla.; that plaintiffs below, in 1918, were the owners of a section of land in Payne county, Okla., and on December 19, 1913, executed an oil and gas lease on said land to A. P. Crockett, as lessee, and who, in turn, assigned the lease to the Fortuna Oil Company, one of the defendants, which, in turn, assigned a part of the acreage covered by the lease to the Charleston Oil Company; that later the Fortuna Oil Company assigned another part of the acreage covered by the lease to the New England Oil & Pipe Line Company, one of the defendants; that the defendant Wickheiser claimed an interest in the lease also by assignment, which the plaintiffs alleged was not on record. The petition alleges that the various defendants had each and all failed to develop said lease; that the consideration for the lease was solely one of implied development, and that by reason of the failure of the defendants to develop the lease, the lease was subject to cancellation; and prayed generally for the cancellation of said lease against each and all of the defendants, and that the plaintiffs' title to the land be quieted as against said lease.

The Fortuna Oil Company, the Charleston Oil Company, and D. A. Wickheiser filed their respective demurrers to the petition, which were overruled, and the Charleston Oil Company and D. A. Wickheiser thereupon filed answers.

The New England Oil & Pipe Line Company filed a petition for removal of the cause to the United States District Court of the Western District of Oklahoma, which application was denied by the court, and thereupon the applicant for removal filed its answer, and later an amended answer, and the case proceeded to trial on December 23, 1918, resulting in a judgment in favor of the plaintiffs for a cancellation of such lease and the quieting of plaintiffs' title against said lease.

At the time of trial a default was entered against D. A. Wickheiser, no appear-

ance being made by him, and default was also entered against the Fortuna Oil Company and the Charleston Oil Company by confession.

On the filing of the stipulations of confession of judgment by the Fortuna Oil Company and the Charleston Oil Company, the New England Oil & Pipe Line Company renewed its application for removal of the case to the United States District Court, which application the court again denied.

The stipulations of the parties above referred to were as follows:

"It is hereby stipulated and agreed by and between the plaintiffs and defendant, Fortuna Oil Company, a corporation, duly organized and existing under the laws of the state of Oklahoma, that default may be entered in said case above entitled as against the defendant, Fortuna Oil Company.

"It is hereby stipulated and agreed by and between the plaintiffs and the defendant, the Charleston Oil Company, a domestic corporation, that judgment may be taken in the above entitled case as against this defendant, whereby its portion of a certain oil and gas lease given by the plaintiffs to A. P. Crockett and assigns may be canceled and set aside upon the following described property, to wit:

"The northeast quarter of the northeast quarter of section 26, and the northwest quarter of the northwest quarter of section 26, all in township 18, range 4, E. I. M. in Payne county, Okla., and

"All of the fractional part of the southeast quarter of the southeast quarter of section 23, township 18, range 4, E. I. M., in Payne county, Okla., except eight (8) acres lying in a square surrounding a well producing gas located on said forty (40) acres.

"And as to said eight (8) acres in square form surrounding said gas well, the existing lease now held and owned by the defendant Charleston Oil Co., shall be in full force according to the terms thereof; it being understood that the lease of the said Charleston Oil Co. shall be in full force upon said 8-acre tract so long as oil or gas is produced therefrom in paying quantities."

The separate findings of fact and conclusions of law of the trial court were as follows:

"No. 1. Now on this 23rd day of December, A. D. 1918, the above entitled cause came on for hearing before the court as per assignment thereof. The plaintiffs appearing in person and by Burdick and Wilcox, their attorneys, and the defendant, The New England Oil & Pipe Line Company, appearing by its attorneys, Gregg & Martin, of Tulsa, Okla., and Robert A. Lowry, of Stillwater, Okla., and the other defendants therein made no appearance, but default was made by them, except as to the stipulations on file as to some of said defendants.

"No. 1½. The plaintiffs introduced their evidence and rested, and the defendants offered their evidence and rested. Thereupon the cause was submitted to the court and same was taken under advisement and said cause continued to January 6, 1919. At the request of the defendants, findings of fact and conclusions of law are made by the court. The court being fully advised in the premises finds as follows:

"No. 2. That the plaintiffs on and prior to December 19, 1913, were owners in fee of the following described land, situated in Payne county, Okla., to wit: The south one-half (S.½) of section twenty-three (23), and the north one-half (N.½) of section twenty-six (26) all in township eighteen (18) north, range four (4) east of I. M.

"No. 3. That on said 19th day of December, A. D. 1913, the plaintiffs for a nominal consideration of one and no/100 ($1.00) dollars, and without any other monetary consideration, passing to them, executed to one A. P. Crockett an oil and gas mining lease on all of the above described property.

"No. 4. That the consideration for said lease moving to the lessors was the prospective and immediate development of said property for the purpose of discovering and producing oil and gas, if any could be found on the same.

"No. 5. That according to the terms of said lease, lessee was to commence the erection of a derrick either on or within two (2) miles of the real estate described in said lease within two (2) months from its date, and commence actual drilling of a well within two (2) months of its date, and the drilling of said well was to be prosecuted continuously with due diligence to a depth of three thousand one hundred feet (3,100) unless oil or gas was found in paying quantities at a lesser depth and to the Bartlesville sand.

"No. 6. That the lessee of said lease, A. P. Crockett, assigned said lease to the defendant, Fortuna Oil Company, a corporation, and it in turn assigned a part of said lease to the Charleston Oil Company, a corporation.

"No. 7. That the said Charleston Oil Company, a corporation, commenced the erection of a derrick on said premises and commenced the drilling of a well thereon within the period provided for in said lease and drilled the same to a depth of about three thousand five hundred feet (3,500) and discovered gas at that depth in paying quantities, to wit, three million (3,000,000)

cubic feet, and said well has been producing gas in paying quantities ever since its discovery, and is so producing at this time, and same is being marketed off said premises. That said Charleston Oil Company in drilling said well at a depth of about one thousand eight hundred seventy (1,870) feet, discovered oil in paying quantities and until said well was drilled into salt water below the said oil bearing sand, it produced for a period of several days about (60) barrels of oil per day; that said oil was of a very high grade.

"No. 8. That notwithstanding the discovery of oil in paying quantities, at a depth of one thousand eight hundred seventy feet (1,870), the defendants, Fortuna Oil Company and Charleston Oil Company, who were the owners of said lease, at said time, failed, neglected and refused to drill any wells to said oil sand or develop said lease for oil, although requested so to do by the plaintiffs. That the owners of said lease failed to drill any more wells to said gas sand and failed to further develop said lease for gas.

"No. 9. That plaintiffs waited for a period of about two (2) years, and upon the continued refusal and neglect of the owners of said lease to further develop said property for oil or gas, the plaintiffs commenced an action in court against the owners of said lease to cancel the same because of the failure and refusal on the part of the lessees and assignees to develop the same, but said case was settled and dismissed by the plaintiffs upon agreement of defendant, Fortuna Oil Company, to commence drilling a well immediately upon said premises to said oil sand, and in pursuance of such agreement, the Fortuna Oil Company assigned a part of said lease which it held to the New England Oil & Pipe Line Company, with the understanding that it would drill a well to said oil sand on that portion of the lease assigned to it; that the said New England Oil & Pipe Line Company immediately drilled a well to said oil sand which came in as a gas well and later drilled itself in and has been producing oil at the rate of from eight (8) to twelve (12) barrels per day since January, 1916; that said oil is of a very high grade, brings a premium of fifty cents (50c) on the market above the posted price for Kansas and Oklahoma crude.

"No. 10. That there is and has been for the past three (3) years, a well to the east about five hundred feet (500) from said original Broyles lease, drilled to said oil sand, which has been producing oil in paying quantities.

"No. 11. That there is reasonable grounds for believing that oil in paying quantities could be found on all portions of said lease and same could be produced at a profit to lessors and lessee.

"No. 12. That since the discovery and production of oil in the well of the defendant, the New England Oil & Pipe Line Company, the plaintiffs requested the several defendants to drill wells to said oil sand on said lease, but they each and all have refused to drill any more wells on said premises or further develop the same for either oil or gas, and the defendant, the New England Oil & Pipe Line Company, has expressly stated to the plaintiffs that it would not drill any more wells on its portion of said lease on account of the thinness of the sand.

"No. 13. That a well in said territory to the oil sand will produce the oil from about ten (10) acres of land surrounding the well, and it is customary in the Cushing field where oil is produced, in the sand found on these premises, commonly known as the Laten sand, to have at least one(1) well to every ten (10) acres of the lease, in order to produce all the oil: that the defendants' well will be protected from drainage by permitting it to have ten (10) acres surrounding its well.

"No. 14. That an operator of ordinary prudence having regard to the interest of both the lessor and the lessees would have continued to drill wells on every portion of said lease to said oil bearing sand for the purpose of producing the oil therefrom.

"No. 15. That no rentals have been paid plaintiff, but said lease has been continued in force as to all of said defendants by reason of the production of gas in said Charleston well.

"No. 16. That since the beginning of this action, a new lease has been given by plaintiffs on a portion of the premises held by Fortuna Oil Company and involved herein, and a well producing sixteen (16) barrels of oil per day has been drilled on said property.

"No. 17 That the interests of the various defendants in said lease under assignments from the original lessee and assignee are as follows:

"Charleston Oil Co., southeast quarter (S.E.¼) of the southeast quarter (S. E.¼) of section twenty-three (23), and the northeast quarter (N.E.¼) of the northeast quarter (N.E ¼) of section twenty-six (26), and the northwest quarter (N.W.¼) of the northwest quarter (N.W.¼) of section twenty-six (26).

"Fortuna Oil Company, west one-half (W.½) of the southeast quarter (S.E.¼) of section twenty-three (23), and the west one-half (W.½) of the northeast quarter (N.E.¼) of section twenty-six (26), and the south one-half (S.½) and the northeast quarter (N.E.¼) of the northwest quarter (N.W.¼) of section twenty-six (26).

"The New England Oil & Pipe Line Company, south one-half (S.½) and the northeast quarter (N.E.¼) of the southwest quarter (S.W.¼) of section twenty three (23).

"D. A. Wickheiser, northwest quarter (N.W.¼) of the southwest quarter (S.W.¼) of section twenty-three (23).

"No 18. That stipulations have been filed by Fortuna Oil Company providing that default may be entered against it.

"No. 19. That stipulation has been filed by Charleston Oil Company providing that judgment might be taken against it, canceling said lease as to it, except for eight (8) acres surrounding its gas well on said premises.

"No. 20. That plaintiff has sold the east one-half (E. ½) of the northeast quarter (N. E. ¼) of section twenty-six (26), but no wells have been drilled on said premises.

"No. 21. That defendants have failed to exercise reasonable diligence to develop said lease and produce the oil therefrom.

"No. 22. The court further finds all the issues in favor of the plaintiffs."

"Conclusions of Law.

"The court concludes as a matter of law as follows:

"No. 1. That there was an implied obligation on the part of all of the defendants to develop with reasonable diligence their respective portions of said lease after the discovery of oil and gas in the well drilled by the defendant, the Charleston Oil Company, and said implied covenant has been broken by each and all of said defendants.

"No. 2. That there was an implied obligation on the part of all of the defendants to develop with reasonable diligence their respective portions of said lease after the discovery of oil and gas in the well drilled by the defendant, the New England Oil & Pipe Line Company, and said implied covenant has been broken by each and all of said defendants.

"No. 3. That the court is the judge of the extent to which the diligence with which development should have progressed under said lease, taking into consideration the interests of both the lessor and the lessee and determining what would be reasonably expected of an operator of ordinary prudence under similar circumstances.

"No. 4. The court, sitting as a court of equity may protect the lessees or assignees as to any wells which they have drilled which are now producing oil or gas in paying quantities by continuing in force said lease as to a sufficient tract of land surrounding such well which will protect the same from drainage from others on said tract.

"No. 5. That the privilege running with said lease by reason of finding oil or gas in paying quantities extended to the assignees of any portion thereof and the obligations implied by law correspondingly extended to the assignee of any portion of said lease.

"No. 6. That plaintiffs are entitled to have said lease canceled as to each and all of said defendants, except as to the wells drilled by defendants and now producing oil or gas in paying quantities and a tract of land around such well sufficient to protect same from drainage.

"No. 7. It is therefore, by the court, considered, ordered, adjudged and decreed, in accordance with the findings of fact and conclusions of law heretofore stated, that the said oil and gas lease executed by the plaintiffs on December 19, 1913, to these defendants, through various assignments thereof, is hereby forfeited and canceled and the title of the plaintiffs in and to the following described lands, to wit: The south one-half (S. ½) of section twenty-three (23) and the north one-half (N. ½) of section twenty-six (26) except the east one-half (E. ½ of the northeast quarter (N. E. ¼) of said section twenty-six (26), all in township eighteen (18) north, range four (4) east of the I. M., Payne county, Okla., shall be, and the title to the same is hereby quieted in the plaintiffs, and said defendants and each of them are hereby perpetually enjoined and restrained from ever exercising or claiming any existing oil or gas lease on said premises in the future, except said lease is continued in force as to the Charleston Oil Company, a domestic corporation, to a tract of land consisting of eight (8) acres in a square form surrounding its well now producing gas and located on the southeast quarter (S. E. ¼) of section twenty-three (23), township eighteen (18) north of range four (4) east of I. M., and with the further exception as to the New England Oil & Pipe Line Company, a foreign corporation, wherein said lease shall be continued in full force and effect as to it upon its well now producing oil and a square tract of land surrounding it consisting of ten (10) acres and located in the southeast quarter (S. E. ¼) of the southwest quarter (S. W. ¼) of section twenty-three (23), township eighteen (18) north, range four (4) east of I. M., Payne county, Okla., and with the above exceptions said lease is hereby declared to be null and void and without further force or effect and judgment is further returned against said defendants for the costs hereof, taxes at $—, to all of which the defendant, the New England Oil & Pipe Line Company, duly excepts and give notice of an appeal to the Supreme Court of the state of Oklahoma.

"John P. Hickam, District Judge."

The defendants' petition in error contains numerous specifications of error, concerning which counsel for the defendant, New England Oil & Pipe Line Company, a corporation, which is the sole plaintiff in error, say in their brief:

"The assignments of error go very much into detail, and the plaintiff in error does

not intend to waive any assignment that has been made; but in arguing the propositions involved, it may be more intelligible to group the assignments together where they relate to a kindred subject, rather than to discuss them in detail. The second and fourth assignments of error refer more directly to the question of removal to the federal court.

"The second assignment is: 'The court erred in overruling the petition and application of the plaintiff in error, New England Oil & Pipe Line Company, for an order removing the cause to the United States Court for the Western District of Oklahoma.'

"The fourth assignment is: 'The court erred in denying the second application made by the New England Oil & Gas Pipe Line Company, which motion was presented just before the trial of said cause in the lower court.'

"Proposition 1.

"This cause was plainly removable on the face of the plaintiffs' petition and on the application filed before the time to answer had expired, and on the bond and notice which accompanied the petition for removal."

With this contention of counsel, we cannot agree. The record discloses that when this application was filed in the trial court on November 19, 1917, together with a bond for $500, objections in writing to the removal were filed by the plaintiffs below on November 23, 1917, and the application was heard by the district court on the 11th day of December, 1917, and the application denied. At the time of the filing of this application for removal, and also at the time of the hearing on the same, the record then showed the petition of the plaintiffs below, filed July 2, 1917, and which petition set out briefly that on the 19th day of December, 1913, the defendants in error, plaintiffs below, leased for mineral purposes 640 acres of land, described in the petition, to A. P. Crockett, who, it is alleged, assigned such lease to the Fortuna Oil Company, which, in turn, assigned portions of such lease, it is alleged, to the Charleston Oil Company, which, in turn, it is alleged, assigned its interest in such lease to the New England Oil & Pipe Line Company, plaintiff in error. Such petition further alleged that under such lease, D. A. Wickheiser claimed an interest in the land owned by such plaintiffs and under such lease. The Fortuna Oil Company, the Charleston Oil Company, the New England Oil & Pipe Line Company, and D. A. Wickheiser were named as defendants, and such petition alleged that the Fortuna Oil Company was a resident corporation of the state of Oklahoma, that D. A. Wickhei-

ser was a resident of the city of Norman, state of Oklahoma, that the Charleston Oil Company was a foreign corporation, and that the New England Oil & Pipe Line Company was a foreign corporation. The petition alleged failure to develop said lease by each and all of the defendants. It concluded with the folowing prayer:

"Wherefore, the premises considered, plaintiffs pray for a judgment against these said defendants and each of them adjudging and decreeing said lease to be forfeited and without force or effect and canceling and setting aside said lease above mentioned on plaintiffs' property and a judgment and decree of court removing same as a cloud on plaintiffs' title and for a judgment and decree of the court quieting the title of the plaintiffs as against said oil and gas lease upon all of said land owned by plaintiffs except a tract of five acres upon which the well of the New England Oil & Pipe Line Company is located, and in case the Charleston Oil Company has a legal existence in the state of Oklahoma and a legal right to hold a lease therein and has not forfeited its right to said gas well, upon a tract of five acres upon which the gas well of said Charleston Oil Company is located, and for such other and further relief as to the court may appear equitable and just and for their costs herein."

To that petition the Fortuna Oil Company, on July 28, 1917, filed its demurrer. The defendant D. A. Wickheiser, on July 28, 1917, filed his demurrer. The Charleston Oil Company, on August 9, 1917, filed its demurrer. These demurrers were overruled by the trial court on the 1st day of March, 1918, each and all of said defendants being given 20 days thereafter to answer.

It will thus be observed that at the time of the filing of this removal petition by the plaintiff in error and at the time of the hearing on the same, on December 11, 1917, the resident defendants, Fortuna Oil Company, a corporation, and D. A. Wickheiser, had entered their appearance and respectively demurred to the petition of the plaintiffs, and such demurrers, at that time, had not been passed on by the court. All of which appears from the record, on December 11, 1917, the date on which the application for removal was presented.

Barnes' Federal Code, 1919, section 790, provides as follows:

"790. Removal of Suits from State to United States District Court:—Any suit of a civil nature, at law or in equity, arising under the Constitution or laws of the United States, or treaties made, or which shall be made, under their authority, of which the district courts of the United States are

given original jurisdiction by this title, which may now be pending or which may hereafter be brought in any state court, may be removed by the defendant or defendants therein to the district court of the United States for the proper district. Any other suit of a civil nature, at law or in equity, of which the district courts of the United States are given jurisdiction by this title, and which are now pending or which may hereafter be brought, in any state court, may be removed into the district court of the United States for the proper district by the defendant or defendants therein, being nonresidents of that state. And when in any suit mentioned in this section there shall be a controversy which is wholly between citizens of different states, and which can be fully determined as between them, then either one or more of the defendants actually interested in such controversy may remove said suit into the district court of the United States for the proper district. * * *"

At the time of the filing of the petition for removal and at the time of hearing on such petition, the record clearly shows that the controversy was not wholly between citizens of different states and was not severable.

This court, in the case of St. Louis & S. F. R. Co. v. Hodge, 53 Okla. 427, 157 Pac. 60, held in the syllabus as follows:

"A state court is not bound to surrender its jurisdiction of a pending action on a petition for its removal into the district court of the United States until a case has been made which on its face shows that the petitioner has a right to the transfer. All issues of fact made on the petition for removal must be tried in the federal district court, but the state court is at liberty to determine for itself whether, on the face of the record, a removal has been effected."

In the body of the opinion the court, speaking through Sharp, J., stated and cited authorities in support thereof as follows:

"* * * It is a well-settled rule that a state court is not bound to surrender its jurisdiction of a suit on a petition for its removal into the circuit court until a case has been made which on its face shows the petitioner has a right to the transfer; that a mere filing of a petition for the removal of a suit, which is not removable, does not work a transfer. To accomplish this the suit must be one that may be removed, and the petition must show a right in the petitioner to demand a removal. Stone v. State of South Carolina, 117 U. S. 430, 6 Sup. Ct. 799, 29 L. Ed. 962; Crehore v. Ohio & Miss. R. Co., 131 U. S. 240, 9 Sup. Ct. 692, 33 L. Ed. 144; Stuart v. Bank of Staplehurst, 57 Neb. 569, 78 N. W. 298; Higson v. North River Ins. Co., 153 N. C. 35, 68 S. E. 920. Section 3, Judiciary Act, Aug. 13, 1888, c. 866 (25 Stat. at L. 435), according to its clear import, and as interpreted by the Supreme Court, authorizes the removal of a cause from a state court to the proper federal court upon the filing of a petition disclosing the right to remove and the giving of the prescribed bond. Upon the filing of such petition it becomes a part of the record; and, if on the face of the record so constituted a suit appears to be removable, the state court in which the petition is filed is bound to surrender its jurisdiction and proceed no further. Ft. Smith & W. R. Co. v. Blevins, 35 Okla. 378, 130 Pac. 525; Donovan v. Wells-Fargo & Co., 169 Fed. 363, 94 C. C. A. 609, 22 L. R. A. (N. S.) 1250."

In the instant case the record did not so show, and the trial court did not err in denying the application for removal.

The second proposition of plaintiff in error is as follows:

"The court erred in denying the second application made by the New England Oil & Pipe Line Company to remove said cause to the United States Court for the Western District of Oklahoma, after the plaintiff had settled and dismissed his cause of action against all other defendants except the New England Oil & Pipe Line Company, which motion was presented just before the trial of said cause in the lower court."

The record discloses that before the hearing of any evidence, and while counsel for the plaintiff was making his opening statement, it appeared for the first time that the controversy was settled and adjusted as to all the defendants except the New England Oil & Pipe Line Company. On this being disclosed the following proceedings were had.

"By the Court: Is there any contention now between the other defendants and the plaintiff?

"By Mr. Burdick: I will state to the court that it has been stipulated and agreed between the plaintiff and the Fortuna Oil Company that the lease might be canceled in so far as its consent was concerned, and it has been stipulated and agreed between the plaintiff and the Charleston Oil Company that the lease might be canceled in so far as it was concerned, except as to eight acres in square form surrounding the gas well which it has on said property.

"By Mr. Gregg: Those stipulations on file?

"By Mr. Burdick: They are not.

"By Mr. Gregg: Are you going to file them?

"By Mr. Burdick: Yes.

"By Mr. Gregg: I wish you would.

"By the Court: Make your statement for the defendant.

"By Mr. Gregg: Just a minute, these are to be filed in the clerk's office?

"By Mr. Burdick: Yes.

"By Mr. Gregg: If the court please with the understading that these stipulations are to be filed at this time—Now at this time upon the filing of the stipulations on behalf of the plaintiff and the defendant the Fortuna Oil Company and at the time of the filing of the stipulation between the plaintiff and the defendant the Charleston Oil Company in this case, the defendant, New England Oil & Pipe Line Company asks leave to again bring to the attention of the court its original petition filed in this case for the removal to the federal court and asks leave that said original petition be at this time amended so as to include and show the fact of the settlement outside of court by mutual agreement between the parties, all of the parties defendant in this case, except the defendant New England Oil & Pipe Line Company, which is a nonresident, noncitizen of the state of Oklahoma, and entitled to have this cause removed. This is the first time that its attention has been brought to the fact of the settlement and the earliest opportunity afforded to the defendant to again present its application and petition for removal, it has a bond here on file, no issue in this case to be tried by this court between the plaintiff and the defendant over which this court would have jurisdiction, except for the joinder, and as no judgment can be entered by the court resulting in a trial against either of these defendants, they have stipulated for the settlement of the case, this court has lost jurisdiction against the New England Oil & Pipe Line Company, in the face of the pending application for removal to the federal court. We now ask for an order removing this cause as between the plaintiff and the defendant New England Oil & Pipe Line Company to the federal court. We will make the amendments, file the amendments to the original petition as of this date.

"By the Court: Motion overruled. Exception allowed.

"By Mr. Burdick: Let the record show our original objections are refiled to the renewed motion."

The record discloses that the pleadings of all the defendants, except the New England Oil & Pipe Line Company, filed prior to the trial are signed by the same attorneys. At the commencement of the trial the defendant Wickheiser made no appearance. The petition of the plaintiffs and the opening statement of their counsel show that the assignment of the lease to the defendant New England Oil & Pipe Line Company covered a tract of 120 acres, upon which the defendant had drilled a producing well; and its failure and refusal to drill other wells upon this particular tract was alleged by the plaintiffs as being such a breach of duty as to authorize the cancellation of the lease as to it.

As we have seen, all controversy between the plaintiffs and the other defendants was at an end by reason of the stipulations, supra, which were brought about and consummated by the actions and conduct of the parties, plaintiffs and defendants, other than the New England Oil & Pipe Line Company, outside of and independent of the court, prior to the commencement of the trial, and not by or through any action or direction of the court, and it required no order of the court in order to the validity of the same. Hence, at the commencement of the trial, there remained a controversy solely between plaintiffs, who were citizens of Oklahoma, and the New England Oil & Pipe Line Company, which was a citizen of the state of Maine. And as soon as this kind of controversy was made manifest, the defendant New England Oil & Pipe Line Company regularly made its second application to remove the cause to the federal court.

Section 790 of the Federal Code 1919, providing for removal of causes, supra, has been construed by this court and the Supreme Court of the United States and other federal courts in numerous cases. And the governing rule announced by such decisions is stated in 23 R. C. L., sec. 128, as follows:

"A removal may be had on the ground of diverse citizenship where a petition therefor is promptly filed after the fact appears by the pleadings of the plaintiff that a resident defendant joined as a defendant with a nonresident petitioner for removal is a sham party having no interest in the real controversy, or that there is a separable controversy in the cases not previously disclosed. Where an action was brought against two defendants, only one of whom was a citizen of the same state as the plaintiff, and the nonresident defendant alone was served with process, an announcement of readiness for trial by the plaintiff was equivalent to a complete severance of the action as to the nonresident defendant, and so far as the latter was concerned converted the action into a separate one against this defendant as effectively as if he had originally been made a sole defendant, and the action became at once removable on the ground of diverse citizenship upon timely application for that purpose. In an action against several defendants on an alleged joint liability, the plaintiff's voluntary discontinuance as to resident defendants, thereby makng the action for the first time one between citizens of different states, gave the remaining defendants a right of removal upon a petition therefor filed immediately upon such discontinuance."

The leading case in the Supreme Court of the United States announcing this doctrine seems to be that of Powers v.

Chesapeake & Ohio Ry. Co., 169 U. S. 100, 42 L. Ed. 673, which was cited with approval by this court, with many others, in the case of Ft. Smith & Western Ry Co. v. Blevins, 35 Okla. 378, 130 Pac. 525, in which case Williams, J., in the opinion of the court reviews the authorities at great length. It is stated in syl. parags. 2 and 4 of the Powers Case, supra, as follows:

"2. A petition for removal filed as soon as the case becomes a removable one—as, when the action is discontinued against defendants as to whom there is no separable controversy who are citizens of the same state with the plaintiff—is filed in time, although it is after the time when defendant was required to answer. * * *

"4. Making a defense in a state court after that court has declined to surrender jurisdiction of the case does not defeat the defendant's right to insist that the case has been lawfully removed into the circuit court of the United States where the objection to jurisdiction is saved upon the record."

Among the many other cases supporting the rule are the following: Golden v. Northern Pac. Ry. Co., 39 Mont. 435, 104 Pac. 549, 34 L. R. A. (N. S.) 1154; Whitcomb v. Smithson, 175 U. S. 635, 44 L. Ed. 303; Great Northern Ry. Co. v. Alexander, 246 U. S. 276; Yawkey v. Richardson, 9 Mich. 529, 81 Am. Dec. 769.

It seems clear to us that the action of the trial court denying the second application of the plaintiff in error for a removal was erroneous, and constitutes reversible error. Having reached this conclusion, it is not necessary to consider further the assignments of error.

The judgment of the trial court is reversed, and the cause remanded, with direction to proceed further in accordance with the views herein expressed.

KANE, MILLER, KENNAMER, and NICHOLSON, JJ., concur.