## CHICAGO, R. I. & P. RY. CO. v. WITT et al.

No. 16087. Opinion Filed April 8, 1930.

Rehearing Denied Sept. 9, 1930.

Commissioners' Opinion, Division No. 1.

W. R. Bleakmore, John Barry, A. T. Boys, and W. F. Collins, for plaintiff in error.

Ledbetter, Stuart, Bell & Ledbetter, and A. G. Morrison, of defendant in error.

TEEHEE, C. In this cause the parties will be referred to in the order of their appearance in the trial court. There, F. H. Witt brought suit for $50,000 in a personal injury action against the Chicago, R. I. & P. Railway Company, a foreign corporation, in which he joined as a codefendant one Columbus Arney, employed as section foreman by the railroad company, who resided at the town of Yukon, Okla., where the alleged cause of action arose. Plaintiff alleged that he, without negligence on his part, suffered injury to his person at a particular street crossing over the railroad right of way through the town of Yukon, and predicated his right of recovery against defendants as follows:

"That it was the duty of the defendant, the Chicago, Rock Island & Pacific Railway Company, its general manager, roadmaster, and the defendant Columbus Arney, to keep the above-mentioned streets, where they cross the defendant railway company's station grounds and right of way in the said town of Yukon, free from obstructions, and to maintain the said streets where they cross said station grounds and right of way free from obstructions and defects and in good condition for the use of the public, so that passengers and intending passengers, travelers on the highway and pedestrians, could use the said streets and highways without endangering themselves, and so that the usefulness of said streets and highways by the public should not be impaired, and which the defendants and each of them negligently and carelessly failed and omitted to do, as will hereinafter be more fully set out, and resulting in painful and permanent injuries to the plaintiff, as will be hereinafter described.

"That on or about the 13th day of January, 1923, at about 6:00 o'clock a. m., the plaintiff went to the said station at said town of Yukon for the purpose of taking a west-bound train. That, he was told by defendant's station agent that the first train which would arrive would not carry him to his intended destination, but that he must wait for a later train; that while waiting for said train plaintiff had occasion to attend a call of nature and it appearing to plaintiff that there was a convenient place for that purpose on the north side of defendant railway company's tracks, he crossed the said tracks, walking north on Third street, and after being relieved was returning to the said railway station, walking south on said Third street, as it was necessary to do to reach the station, and while walking in a southerly direction on said Third street where it passes over the station grounds and right of way of said defendant railway company, his feet came in contact with one of the rails of said railway company's track, which said defendant railway company had carelessly and negligently laid across said street, and which the said company, its general manager, roadmaster, and section foreman, the said Columbus Arney, had negligently and carelessly maintained; that said rail constituted an obstruction in and across the said street, extending abruptly some six or eight inches above the level of said street, making it dangerous to travelers and pedestrians using the said street, and impairing the usefulness of same to the public; that it was dark and the said defendant railway company negligently and carelessly failed and omitted to sufficiently light that part of its said station grounds and right of way which were crossed by said street, so that plaintiff was unable to see said obstruction, and when his feet came suddenly and unexpectedly against the said rail, he was thrown violently to the ground and under a train which was moving in a westerly direction, causing him to be seriously and permanently injured."

In conformity to law, the defendant railroad company timely filed its petition for removal of the cause to the federal district court, wherein, following appropriate jurisdictional pleadings, it was alleged:

"That the said Columbus Arney was wrongfully and fraudulently joined as a defendant in this said action, for the sole purpose of preventing a removal of this cause to the proper United States district court; that the joinder of said Columbus Arney as a party defendant in this cause was made in bad faith and without any reasonable basis therefor,"

for the reasons that the place of injury was not a public highway across its tracks, which had been laid by the defendant railway company,

"in the early part of the year 1917 at the proper and regular height, conformably to standard plans and specifications, and have ever since been and remained in identically the same place and position in which they were originally placed, and did not on the 13th day of January, 1923, and never have crossed over or in any way obstructed the said Third or any street or public highway in said town of Yukon.

"That the said Columbus Arney at no time while employed as section foreman, or in any other capacity by this petitioner, or upon the railroad of this petitioner, ever had any supervision or control over the laying and maintenance of said rails and railroad tracks at the place where plaintiff was injured, or any right or authority to interfere in any respect with the location of the same, or to move, raise, or lower the same from or out of the original location and position in which the same were placed in the year 1917, and that the said Columbus Arney in truth and in fact never in any way changed the location or position of said rails and tracks from or out of the place in which they were laid in the year 1917; that all of the facts hereinbefore alleged and set forth were intimately known to the plaintiff, or by the exercise of any degree of diligence could have been known to him, and that, as was well known to the plaintiff, the said Columbus Arney was not present at the time plaintiff received the injuries for which he seeks recovery of damages in this action, and was in no manner or respect accountable for or chargeable therewith."

To the petition of removal, plaintiff filed his response of denial of the grounds thereof. Upon hearing, the court denied the petition, to which ruling the defendant railroad company saved and preserved its exceptions. Thereupon defendants filed their separate answers of general denial. Upon trial there was a jury verdict for the plaintiff and the defendant Arney. Judgment on the verdict against the defendant railroad company for $15,000 followed, from which the defendant railroad company appealed.

The defendant complains of the judgment under five specifications of error; the first,

and in our view the controlling assignment, being as follows:

"All proceedings had in said cause in the district court of Garvin county, Okla., subsequent to the filing of the petition for removal, with proper notice and the required bond, were coram non-judice and void."

Thereunder, the decisive question presented is: Does plaintiff's petition state a cause of action against the defendant Columbus Arney? If not, the court erred in denying the petition for removal and the proceedings subsequent to the adverse action were of no legal force or effect. New England Oil & Pipe Line Co. v. Broyles, 87 Okla. 55, 209 Pac. 312; Ft. Smith & W. R. Co. v. Blevins, 35 Okla. 378, 130 Pac. 529. In our consideration hereof it must necessarily be assumed, although denied in the petition for removal, that the place of injury was a public highway, as plaintiff asserts his right of recovery against the defendants upon their failure of compliance with section 5533, C. O. S. 1921, which provides as follows:

"It shall be the duty of every railroad company or corporation doing business, or operating a line of railroad, within this state, to construct a crossing across that portion of its track, roadbed, or right of way over which any public highway may run, and maintain the same unobstructed in a good condition for the use of the public, and to build and maintain in good condition all bridges and culverts that may be necessary on its right of way at such crossing; and in case any railroad company or corporation fails so to construct and maintain said crossing for 30 days after written notice by the road overseer of any road district or the council or board of trustees of any city or town in this state, or 50 petitioners of any city or town who are interested (where such work or repairs are needed), to be given to the section boss, or any station agent of any railroad company or corporation in the county (where such work or repairs are needed), it shall forfeit and pay to said county, road district, city or town complaining, the sum of $25 per day for every day said company or corporation may neglect to comply with the requirements of this section."

By virtue of this provision, it is not open to controversy that it is the legal duty of the railroad company to maintain public crossings over its railroad tracks and right of way in that condition of improvement to assure the safety and security of person of both traveling public and its own employees. Chicago, R. I. & P. Ry. Co. v. Taylor, 79 Okla. 142, 192 Pac. 349.

In this state of the law, was it the duty of the section foreman as to third parties to maintain the crossing at which plaintiff suf-

fered the injury, or was it a duty that he owed to his employer by virtue of his contract of employment? If there is seemingly a conflict among the earlier cases in our juridical history, it may now be regarded as the controlling rule of test in this class of cases that to constitute a cause of action against an employee or a servant by a third party, the negligence charged must express or establish some breach of duty which the employee or servant owed to the injured party in the performance of the duties owing to the master, for which breach the employee is answerable as a principal. Brower v. Northern Pac. Ry. Co., 109 Minn. 385, 124 N. W. 10, 25 L. R. A. (N. S.) 354; Haynes v. Cincinnati, N. O. & T. P. R. Co., 145 Ky. 209, 140 S. W. 176, Ann. Cas. 1913B, 719; Sumey v. Craig Mountain Lbr. Co., 31 Idaho, 234, 170 Pac. 112; Mayer v. Thompson-Hutchison Bldg. Co., 104 Ala. 611, 16 So. 620, 28 L. R. A. 433; McGinnis v. Chicago, R. I. & P. R. Co., 200 Mo. 347, 98 S. W. 590, 9 L. R. A. (N. S.) 880, 18 Am. St. Rep. 661, 9 Ann. Cas. 656; Burrichter v. Chicago, M. & St. P. Ry. Co., 10 Fed. (2nd) 165.

The negligence with which the defendant Arney is charged by plaintiff was that he "negligently and carelessly maintained" the railroad tracks which the "defendant railroad company carelessly and negligently laid across" the street where the injury occurred and which tracks so laid by the defendant company were the cause of his injury. There was a want of allegation of the facts to show the manner in which the defendant Arney, either on his own motion, if it were his duty to so act under his employment, or at the direction of his employer, had undertaken to maintain the railroad tracks from which it may be determined that the defendant Arney was negligent either by commission or omission in a duty he owed to plaintiff in the performance of his duty as an employee of the railroad company. The negligence charged, in quality, was but the legal conclusion of the pleader without a statement of the facts thereof. "It is not sufficient to allege negligence merely as a legal conclusion, but facts must be exhibited showing in what the negligence consisted." Stokes v. Great Southern Lumber Co., 21 Fed. (2nd) 185; Bryce v. Southern Ry. Co., 122 Fed. 709, 125 Fed. 958; Atlantic Coast Line R. Co. v. Bailey, 151 Fed. 891; Drake v. Hagon, 108 Tenn. 265, 67 S. W. 470; King v. City of Beaumont, 296 Fed. 531. The principle is our basic rule of pleading. Smith v. Board of Commissioners, 26 Okla. 819, 110 Pac. 669; International Harvester Co. v. Cameron, 25 Okla. 256, 105 Pac. 189.

Even if the language of the pleader be given an extended application, the negligence of the defendant Arney as charged, if any, would clearly be that of nonfeasance to the master, for, as noted, the law under which this action was brought makes it the duty of the railroad company to maintain its tracks at a public highway crossing, and does not impose this upon the employees of the company, though the measure of their duty under their employment is that they cannot disregard with impunity their duty to third persons in the performance of their duties to the master. Of that character of negligence the plaintiff cannot rightly complain, as the rule appears to be well settled that such negligence is insufficient to sustain an action against a servant by third parties. 5 Thompson on Negligence, 244, section 5771; Mechem on Agency, 403, section 752. And the rule has often been judicially applied where the proposition under consideration was involved. Cincinnati, N. O. & T. P. Ry. Co. v. Robertson, 115 Ky. 858, 25 Ky. Law, 265, 74 S. W. 1061; Floyt v. Shenango Furnace Co., 186 Fed. 539; Plunket v. Gulf Refining Co., 259 Fed. 968; Kelly v. Robinson, 262 Fed. 695; Macutis v. Cudahy Packing Co., 203 Fed. 291; Chicago, R. I. & P. Ry. Co. v. Step, 151 Fed. 908; Bryce v. Southern Ry Co., supra; King v. City of Beaumont, supra; Prince v. Illinois Central R. Co., 98 Fed. 1; Kelley v. Chicago & A. Ry. Co., 122 Fed. 286; Morefield v. Ozark Pipe Line Corporation, 27 Fed. (2nd) 890.

Under the foregoing governing legal principles, therefore, we reach the conclusion, and we so hold, that in an action of tort by a third party, as here, against a section foreman joined as a party defendant with his employer, a railroad company, which is by law charged with the duty of constructing and maintaining a crossing over its railroad tracks and right of way at an intersection of a public highway, unobstructed and in a good condition for the use of the public, to recover for personal injuries alleged to have resulted from the master's negligent construction and maintenance of its tracks at such crossing, a petition which alleges that the employee "negligently and carelessly maintained" such tracks without a statement of facts showing in what the negligence of the employee consisted whereby he committed a breach of or omitted a duty to the injured party for which the employee may be held liable as a principal, fails to state a cause of action against the employee.

From this conclusion, under a well-settled rule of law, it necessarily follows that in such case, where the joined employee is a

250

resident of the state and his employer a nonresident, and the petition on its face shows no cause of action against the resident employee, as here, the joinder of such employee is in law a wrongful joinder, and constitutes no bar to a removal of the cause to the district court of the United States; and that a denial of a petition for removal based on that ground and timely filed by the nonresident defendant is reversible error, where such petition alleges the requisite grounds of original federal jurisdiction of the cause as against the nonresident defendant. Floyd v. Shenango Furnace Co., supra; Macutis v. Cudahy Packing Co., supra; Chicago, R. I. & P. Ry. Co. v. Step, supra; Prince v. Illinois Central R. Co., supra; King v. City of Beaumont, supra; Weicker v. National Enameling & Stamping Co., 204 U. S. 176, 27 Sup. Ct. Rep. 184, 51 L. Ed. 430, 9 Ann. Cas. 757; Bryce v. Southern Ry. Co., supra; Wilson v. Republic Iron & Steel Co., 257 U. S. 92, 66 L. Ed. 144; Union Pac. R. Co. v. Sleeth, 79 Colo. 548, 246 Pac. 1021; Salem Trust Company v. Manufacturers' Finance Company, 264 U. S. 182, 44 Sup. Ct. Rep. 266, 68 L. Ed. 628.

These conclusions necessarily determine this appeal, and do not require our consideration of the remaining assignments of error.

For the foregoing reasons, therefore, the judgment of the district court is reversed, and the cause remanded, with the direction to sustain the petition for removal.

LEACH, HERR, FOSTER, EAGLETON, and DIFFENDAFFER, Commissioners, concur. HALL, Commissioner, dissents.

RILEY, HEFNER, CULLISON, SWINDALL, and ANDREWS, JJ., concur. MASON, C. J., and HUNT and CLARK, JJ., dissent. LESTER, V. C. J., absent.

CLARK, J. (dissenting). The majority opinion in this case is not supported by state or federal decisions. First, it is the policy and duty of the state courts, when vested with jurisdiction of the subject-matter and of the persons, to resolve all doubts of its continued jurisdiction in its favor. In other words, it is the universal rule that state courts look upon their jurisdiction with some degree of jealousy and a measure of cleavage. Second, it has become the settled policy of the federal Supreme Court that all doubts are to be resolved in favor of the jurisdiction of the state court. Chicago, R. I. & P. Ry. Co. v. Schwyhart, 227 U. S. 184; Mexican Nat. Ry. Co. v. Davidson, 157 U. S. 208; Hanrick v. Hanrick, 153 U. S. 192; Shaw v. Quincey Mineral Co., 145 U. S. 444.

A case is not properly removed to the federal court under any state statute or state law or provision of any state Constitution; but it is removable to the federal court by reason of a federal statute. This court must decide two questions before this case is ordered to the federal court. First, that the federal court has jurisdiction. Second, that the federal court, having jurisdiction, ousts the state court of jurisdiction. This court is without authority or jurisdiction to determine the jurisdiction of the federal court. That can only be determined by the federal court. So far as this record shows, defendant below, plaintiff in error here, has not invoked the jurisdiction of the federal court by an application to that court to take jurisdiction in this case. The decree of this court transferring this case to the federal court cannot be enforced, for the reason this court is without jurisdiction to enter the order or enforce it, namely, that the federal court take jurisdiction of this cause of action. The state court should not, in any way, interfere with the federal court's taking jurisdiction. The decisions of the Supreme Court of the United States should be, and are, binding upon the state courts on this question. The state courts have no right or authority to extend the rule established and observed by the highest federal court. That is what the majority opinion does in this case.

The majority opinion, apparently, was decided upon the theory that plaintiff's petition did not state a good cause of action against both the railway company and its servant, Arney. It is stated both in the syllabus and in the body of the opinion that the allegations of negligence attributable to the defendant Arney were insufficient "without a statement of facts showing in what the negligence of the employee consisted," and that the allegations of negligence attributable to Arney were mere legal conclusions. Passing over that statement and assuming for the purpose herein that these allegations were but legal conclusions, it is sufficient to state in this connection that neither defendant Arney nor the railroad company filed a motion or demurrer to the petition in the absence of a motion or a demurrer, even the legal conclusion (if they were such) constituted a sufficient pleading.

In this connection, considering that the petition was neither challenged by a motion nor a demurrer, what would have been the judgment of the majority members of this court regarding the sufficiency of the petition as against the resident defendant, if no motion to remove had been made and the

petition had been challenged only by an objection to the introduction of evidence? That is precisely the situation here. That test would go beyond the requirements of the Supreme Court of the United States, but even in that event, would not we have been driven to the conclusion that the petition was good as against such objection?

Assuming that we should leave to the federal courts the duty of deciding their own questions—the extent of their jurisdiction, under the acts of Congress—it is sufficient to say that the Supreme Court of the United States in the case of Chicago, R. I. & P. Ry. Co. v. Schwyhart, supra, has defined the standard for their own observance and for the lower federal courts, and of course the state courts, on the question of a removal of a cause from a state to a federal court. In the Schwyhart Case it was held that:

"On the question of removal this court need not consider more than whether there was a real intention to get a joint judgment, and whether the record showed colorable ground for it when the removal was denied."

The holding in that case (C., R. I. & P. Ry. Co. v. Schwyhart) reflects the policy of the Supreme Court of the United States in regard to the question before us:

"Whether there was a joint liability of defendants sued jointly for negligence is a matter of state law, and this court will not go behind the decision of the highest court of the state to which the question can go. Southern Railway Co. v. Miller, 217 U. S. 209."

The decisions of the Supreme Court of the United States are uniform as to the above proposition. Among these decisions are the cases of Alabama Great Southern Ry. Co. v. Thompson, 200 U. S. 206, 4 Ann. Cas. 1147; Weicker v. National Enameling Co., 204 U. S. 176; Burlington, etc., Ry. Co. v. Dunn, 122 U. S. 513; Iowa Central Ry. Co. v. Bacon, 236 U. S. 305, and Chicago, R. I. & P. Ry. Co. v Whitaker, 239 U. S. 421, 60 L. Ed. 360.

The pleadings in the federal case of Rountree v. Mt. Hood Ry. Co., 228 Fed. 1010; Carter v. Atlantic Coast Line Ry. Co., 84 S. C. 546, 66 S. E. 997, and Patry v. Northern Pacific R. R. Co., 114 Minn. 375, 131 N. W. 462, 34 L. R. A. (N. S.) 586, are similar in point of fact and identical in principle with the plaintiff's petition in the present case. In this connection, it will be seen by reference to plaintiff's petition, a part of which is quoted in the majority opinion, that the two defendants, the railway company and the resident defendant, Columbus Arney, are

charged with negligently and carelessly maintaining the railway crossing over Third street in the town of Yukon in a dangerous and unsafe condition for the public. In other words, the petition charged that Arney negligently and carelessly maintained the crossing on a public highway, a public street in the town of Yukon, and that such negligence or breach of duty was the proximate cause of the injury to plaintiff.

In the case of Patry v. Northern Pacific Ry. Co., supra, the Supreme Court of Minnesota held that a petition stated a cause of action against the resident defendant, the section boss, where the petition alleged that the "section boss was negligent in failing to keep the right of way clear from combustible matter, which resulted in starting a fire from sparks from the engines which destroyed the property of another on adjoining premises."

In the case of Carter v. Atlantic Coast Line Ry. Co., supra, the petition of plaintiff was quoted in full. In that case it was alleged that one C. H. Carpenter, as in the instant case, was a section boss or section master, and it was alleged that it was his duty, along with the duty of the railway company, to keep the right of way free and clear of combustible and inflammable matter. In the case at bar it was the alleged duty of Columbus Arney and the railway company to construct and maintain the crossing on Third street in Yukon in a safe manner for the benefit of the public. In the Atlantic Coast Line Case the petition further alleged that "the said defendant railway company and C. H. Carpenter carelessly, negligently, recklessly, willfully, and wantonly allowed the right of way near to and adjoining the property of plaintiffs to grow up in bushes, weeds, grass, etc., and to finally become dry and combustible." It is well to note in this connection that the petition alleges acts of omission only as against the section boss, C. H. Carpenter. The same is true of the Minnesota case, Patry v. Northern Pacific Ry. Co., supra. This is mentioned for the reason that the majority opinion in the case at bar was also based upon the theory that the public or third persons are denied relief or right of action against servants whose breach of duty has been sometimes styled nonfeasance. This question will be discussed at another juncture herein. It is sufficient to say that the South Carolina Supreme Court held that the petition stated a good cause of action against the resident defendant, the section boss, C. H. Carpenter.

The case of Rountree et al. v. Mt. Hood

Ry. Co. et al., 228 Fed. 1010, was a case similar to the South Carolina and the Minnesota cases above referred to, in that the damage to neighboring property resulted from the negligence of the railway company and its servants, including the resident defendant, in failing to keep the right of way clear of combustible debris. In that case the resident defendant was one Early, who was vice president and general manager of the company with certain duties defined by the railway company's regulations. The ground for stating a joint cause of action against Early and the railway company and retaining the case in the state court was that he was personally liable, along with the railway company, for permitting or allowing the debris to accumulate upon the right of way. However, the railway company filed its petition for removal, to which petition was attached several affidavits to the effect that Early "had nothing whatever to do with the care, control, or management of the right of way, or the repair, maintenance, or operation of the engines, cars, or other rolling stock, or the care, repair, or maintenance of the roadbed; that the operating department is under the exclusive control and direction of an officer, other than Early, who is called a superintendent. * * *" Said petition of the railway company for the removal was challenged just as in the case at bar. The federal court held, on a motion to remand, that the federal court was without jurisdiction and the case was properly triable in the state court. The court in its opinion, quoting from two reasonably recent and leading cases on the subject, said:

"It was held in Ches. & Ohio Ry. Co. v. Cockrell, 232 U. S. 146, 34 Sup. Ct. 278, 58 L. Ed. 544, that merely to traverse the allegations of joint liability made on the part of the plaintiff is not sufficient to show fraud, but that facts must be set forth such as compel the conclusion that the joinder is without right and made in bad faith. This holding has been reaffirmed in a very recent case. Chicago, Rock Island & Pac. Ry. Co. et al. v. Whitaker, 239 U. S. 421, 36 Sup. Ct. 152, 60 L. Ed. 360."

It clearly appears that as a further inducement to the majority opinion there was a distinct reliance upon that old, outgrown myth, the test of liability based upon the obsolete terms "misfeasance" and "nonfeasance," in connection with the law of torts in relation to the foundation of legal liability. In this connection, in the opinion it is said:

"Even if the language of the pleader be given an extended application, the negligence

of the defendant Arney as charged, if any, would clearly be that of nonfeasance to the master. * * * Of that character of negligence the plaintiff cannot rightly complain, as the rule appears to be well settled that such negligence is insufficient to sustain an action against a servant by third parties."

A number of cases are cited as supporting this doctrine. The writer certainly concedes that the cases cited support the doctrine of nonliability because of what these cases lucklessly termed "nonfeasance." But that doctrine, the basis of liability resting upon the distinction between misfeasance, malfeasance, and nonfeasance, was discarded by practically all the courts more than 50 years ago. Professor Jaggard, in his comprehensive work on the Law of Torts, vol. 1, pp. 288, 289, published 35 years ago, on this particular point said:

"The thinness and uncertainty of the distinction between the misfeasance, malfeasance, and nonfeasance leaves an exceedingly unstable basis on which to rest an important principle of liability. It would, indeed, seem to be a fair criticism on the subsequent reasoning that the courts have, in applying the distinction, engaged in a solemn game of logomachy. * * * The futility of such reasoning on the word 'nonfeasance' appears fully from the lack of definitiveness of the meaning to be given the term. This solemn legal jugglery with words will probably disappear 'if the nature of the duty incumbent upon the servant be considered.' If the servant owe a duty to third persons, derived from an instrumentality likely to do harm or otherwise, and he violates that duty, he is responsible. His responsibility rests on his wrong-doing, not on the positive or negative character of his conduct. A wrongful omission is as actionable as a wrongful commission."

There appears in vol. 20, A. L. R. p. 97, an extended note on this subject covering nearly 100 pages. At page 99 we find this exceedingly appropriate language regarding this myth of the law under discussion. It is there said:

"* * * The doctrine laid down by some text-writers, founded on Lord Holt's dictum in Lane v. Cotton (1701) 12 Mod. 488, 88 Eng. Reprint, 1466, has caused much confusion in the decisions over a fictitious distinction between acts of malfeasance and misfeasance and those of nonfeasance. As shown by Labatt on Master & Servant, page 7973, this error and the absence of any valid distinction in the classes of negligence were distinctly pointed out more than 25 years ago. * * *"

Regarding the obsolete character of the supposed principle, on page 158 of the note it is stated that:

"A few cases have adopted and made a rule of decision the principle that the servant is not liable for nonfeasance. That principle being without foundation to support it, the decisions on the facts in the respective cases were merely fortuitous, and may or may not have been right, according to whether or not a duty was owing to plaintiff by defendant."

The cases supporting this doctrine are there enumerated. On page 165 the recent cases and cases recognizing liability for what was once termed nonfeasance by some courts, but now termed misfeasance, are set forth, and it is stated in the note to this effect:

"The numerical weight of authority, as well as of reason, ignores the fact that the delict of the agent was a mere nonfeasance toward his master, and tests the question by the duty which the servant owes to the person injured."

Many of the states whose early decisions were committed to the Lord Holt dicta now ignore and disregard that the delict of the agent is a mere nonfeasance toward his master. In this list is a case by the Supreme Court of Kansas, Dowell v. C., R. I. & P. Ry. Co., 83 Kan. 562, 112 Pac. 136, which was approved on this point by the Supreme Court of the United States in 1913 and reported in 229 U. S. 102. The states which have passed on the question, and which jurisdictions are committed to the modern and overwhelming majority rule, are Alabama, Georgia, Illinois, Indiana, Kansas, Kentucky, Maine, Maryland, Massachusetts, Michigan, Missouri, New Hampshire, New Jersey, Pennsylvania, Virginia, and Washington. Space prevents a discussion of these cases, but an example of the principle which is announced in each of them was stated in Morey v. Shenango Furnace Co., 112 Minn. 528, 127 N. W. 1134, in which it was held:

"That if a servant owes a duty to a third person and violates that duty, he is responsible because of his wrong-doing and not because of the positive or negative character of his conduct."

In the case of Carter v. Atlantic Coast Line Ry. Co., supra, in speaking of the duty of the section boss, Carpenter, to keep the right of way free from combustible material, and that he owed this duty to third persons, and that the test of liability did not depend upon the positive or negative character of his duty, and where he omitted to keep the right of way free of debris he violated a duty to third persons and was liable therefor, the court said:

"Where such duty and neglect thereof appear, it seems utterly unreasonable to say that the negligent person shall not be liable merely because he was the agent or servant of some other person, to whom he might also be liable. To say that liability for failure to perform a duty toward a person who is injured in consequence shall not exist because the guilty person is in the same transaction also guilty of a breach of another and distinct duty to a different person, is to state a proposition condemned by the analogies of the law, as well as by reason."

In this connection, the Minnesota Supreme Court, in Patry v. Northern Pacific Railway Co., supra (a section boss case also), said:

"They were required as servants to comply with the law for the benefit of their employer, but they were also personally required to perform those duties for the benefit of the public. Mayberry v. Northern Pacific Ry. Co., supra; Ward v. Pullman, 131 Ky. 142, 114 S. W. 754, 25 L. R. A. (N. S.) 343; Carter v. Atlantic Coast Line R. Co., 84 S. C. 546, 66 S. E. 997. According to the facts pleaded, all of the defendants contributed to the result, and the negligence of each was concurrent with that of the others."

The writer notes that a considerable portion of the petition for removal is quoted in the opinion. I cannot say what effect, if any, these recitals in the petition for removal had upon the ultimate conclusion reached by the members who concurred in the majority opinion. In this connection, however, it should be noted that other than the application of the term "fraudulent" to the joinder, the allegations in the petition for removal were merely a traverse of the allegations in the plaintiff's petition.

The petition for removal was traversed by the plaintiff, and therefore this denial of the duty of the resident defendant alleged in plaintiff's petition, under the law, goes out of the case. On this point the Supreme Court of the United States in Chesapeake & Ohio Ry. Co. v. Cockrell, 232 U. S. 146, said:

"Merely to traverse the allegations upon which the liability of the resident defendant is rested, or to apply the epithet 'fraudulent' to the joinder, will not suffice; the showing must be such as compels the conclusion that the joinder is without right and made in bad faith."

Relying upon one's personal knowledge and general information, we might differ as to many of the duties of the section foreman; different railway companies might impose upon them different duties, but in every case in passing upon an allegation to remove a case to the federal court, by reason of the diversity of citizenship of one of the

parties, we are restricted to the allegations which the plaintiff has made in his petition, together with the uncontradicted allegations in the petition for removal. In this connection, plaintiff charged Arney with the duty of maintaining the crossing in a safe manner, and a breach of that duty in failing to do so.

I have discussed this phase of the case at unusual length, but by so doing, if the profession can be aroused to a correct realization of the dangers and pitfalls in the wake of a rule which would resurrect or reincarnate so grossly an unjust and unscientific rule, which has been characterized by the courts as "having a pernicious effect of confusing the subject"—the rule of basic liability—the labor and effort will be fully rewarded.

The majority opinion in this case is fundamentally wrong. First, it attempts to decide the question of jurisdiction of federal courts, which it is without authority to do, and in so deciding it adheres to a rule or holding contrary to a majority of the decisions of the federal courts. Second, the majority opinion overlooks and disregards the rule adhered to by the various state courts and respected by the federal Supreme Court, that all doubts are to be resolved in favor of the jurisdiction of the state court. Third, the majority opinion erroneously assumes that the alleged acts of negligence of the resident defendant were acts of nonfeasance only, and entirely overlooks the contrary and modern rule now observed by practically all the courts and all the text-writers, that the positive or negative character of the duty is not the basis of liability.

It must be observed that the Oklahoma Supreme Court is without authority to confer or vest jurisdiction upon a federal court. The federal courts derive their jurisdiction from the federal Constitution and the acts of Congress of the United States. Under the majority opinion in this case, all the proceedings had in the state court are set aside, the judgment is vacated and the cause is transferred to the federal court. May I ask what would be the situation or what would be plaintiff's predicament if the federal court should strictly observe the law and refuse to entertain jurisdiction of the case? Under such a situation, the highest court of this state, having declined jurisdiction, and its decision having become final and not subject to review by any court, and the federal court declining jurisdiction upon its well-defined policy uniformly observed by the federal Supreme Court, just what

forum or just where could plaintiff seek redress or an adjudication of his rights?

This court should not close its doors to citizens of this state who apply to it to have their rights adjudicated. Our courts were established by the people that a forum may be open to them in which their rights could be determined.

HUNT, J., concurs in this dissent.