**MIDLAND VALLEY R. CO. v. TOWNES, Adm'r.**

No. 25205.    Dec. 1, 1936.

Rehearing Denied Jan. 9, 1937.

Application for Leave to File Second Petition for Rehearing Denied Feb. 2, 1937.

action, recovered a judgment therefor, and the defendant railway company appeals.

This accident occurred in the outskirts of the city of Tulsa. The defendant's single railway track ran north and south, in the middle of its right of way, which was 100 feet wide. Ute street lay east and west, and intersected the right of way at right angles. It was at this intersection where Warren was killed. Negligence in the operation of the train is not alleged, and the specific negligence relied upon, and forming the basis of recovery, was the defendant's failure to properly construct and maintain the crossing across its entire right of way in a reasonably safe condition for the use of the public.

There was evidence tending to prove that approaching the tracks from the west, and proceeding eastward, a slight incline led up the side of the embankment forming the roadbed of the track, and, upon crossing the track, the grade immediately declined sharply. No part of the roadway across the right of way was paved or improved. The railway rails stood up some three or four inches above the ground between them. It was muddy between the rails and no planks or boards were placed there or on the sides of the inclines leading up to the rails on the outside. The east decline (from the east rail downward) was muddy and slick, and from the east ends of the cross-ties, extending on eastward throughout the remainder of the right of way crossing, was described by several witnesses as being just a "bowl of mud." However, there was a culvert extending north and south across the traveled portion of the right of way, parallel with the tracks and east thereof, and it was higher than the roadway between it and the track, though not higher than the track. Between the east rail and the culvert the mud and mud holes were described as being a foot or more deep. Defendant's witnesses estimated the distance between the east rail and the culvert to be about 20 feet, while witnesses for plaintiff estimated it to be as little as 12 or 14 feet.

Plaintiff's deceased and one J. J. Walker were proceeding east on Ute street, in an automobile owned and being driven by Walker. A man by the name of Pierce was also riding in the car. All three of them were agents of an insurance company, and each had a separate district out in that part of town in which to collect insurance premiums, the task in which they were engaged at the time. They crossed the railway track, and when they arrived at a place just east of

Hamilton & Howard, for plaintiff in error.

C. B. Stuart, E. J. Doerner, and B. A. Hamilton, for defendant in error.

PHELPS, J. F. C. Warren was struck and killed by the defendant's train at a railway crossing. His administrator, plaintiff in this

the culvert, it was decided that they could not proceed further, due to the mud, and they let Pierce out and he proceeded on foot into his territory. He did not see the accident. We next find the car, with the two men in it, still headed east, but with the rear end thereof near the east rail of the tracks. The inference is that they backed the car westward across the culvert, and between the culvert and the .east rail. Now comes a sharp conflict in the evidence. The engineer of the train then approaching the crossing from the south testified for the defendant that the automobile slowly and steadily backed into the path of the train, without stopping or hesitating. But on behalf of the plaintiff several other eye-witnesses testified that when they saw the car it was not backing at all, but that it was "stuck" in the mudhole close to the east rail, on the east of said rail, with the rear of said automobile sticking back above or near the rail. They testified, further, that the rear wheels were spinning and slipping, and that the car was rocking and the men in it were working as if engaged in an effort to get out of the hole, and that just before the collision plaintiff's deceased was attempting to get out of the car. Evidently the jury accepted the. narration of plaintiff's witnesses, and we are bound by that finding. Inasmuch as the automobile was of about the same length as the' distance between the east rail and the culvert, or possibly but little shorter, and the culvert and track both were higher than the intervening muddy street, it could quite plausibly be argued that the automobile was caught there and could not be moved in either direction in time to avoid the collision. The oncoming northbound train struck the automobile and carried it 175 feet along the track, killing both occupants.

Section 11963, O. S. 1931 (sec. 5533, C. O. S. 1921), places upon every railroad company doing business in this state the mandatory duty of constructing and maintaining crossings over its tracks, roadbeds, and rights of way over which any public highway may run, and requires that such crossings shall be unobstructed and in a good condition for the use of the public. This means the crossing over the entire width of the railway right of way, not just the track. C., R. I. & P. R. Co. v. Taylor, 79 Okla. 142, 192 P. 349. There can be no question about this being a public highway within the meaning of the statute. Although the railway right of way itself was not technically incorporated into the city limits, and the street at that particular point had not been formally' dedicated to public use, such had occurred and was true as to the street where it entered the right of way on the east and on the west. The additions bordering both sides of the highway were within the city limits. The culvert had been constructed some years before, by residents living nearby, with the knowledge and consent of the defendant and with material furnished them by the defendant. Residences were on both sides of the right of way. Public travel had crossed the railway at this point for years. In St. Louis, I. M. & S. Ry. Co. v. O'Connor, 43 Okla. 268, 142 P. 1111, and Midland Valley R. Co. v. Shores, 40 Okla. 75, 136 P. 157, we held that although a public street crossing such a right of way may never have been opened and dedicated to, and accepted by, the public as a public highway. yet if it has been used continuously by the public for several years, and recognized and treated as a public crossing by the defendant, it will be presumed to be such; and that the railroad company owes the duty to the public to maintain such right of way in a reasonably safe condition. It therefore appears that there was a duty owing by the defendant to keep the crossing over its entire right of way reasonably safe for travel. That this duty was not properly performed is abundantly justified by the evidence.

But the defendant says that even granting that the crossing was negligently maintained, it was not the cause of the collision; that it was the position of the automobile, or the backing of same onto or near the east rail, which caused the accident. In part, this contention overlooks the fact that it was defendant's negligence which caught and held the automobile in that position, several witnesses having testified that the car was "stuck" there, with the wheels spinning. One of these witnesses testified that it was just a few seconds that the car was there, before it was struck. If the testimony of those witnesses be true (and such the jury must have believed), then the occupants of the car had no choice in the matter, for they could not extricate the car. Of course, if the driver of the car had not driven the car to that particular chug hole, or place, it would not have been caught there, but that is another question, to be considered later in this opinion. That does not alter the fact that a causal connection exists between the negligence of the defendant in permitting the hole to be there, and the injury to the occupants of the car. If there was negligence of the deceased, and a causal connection between it and his injury,

those facts do not eliminate the fact that there was also negligence of the defendant which had its own causal connection with the injury; in other words, if there was negligence of the deceased, contributing to his injury, same does not eliminate the **fact** of defendant's negligence and its own causal connection with the injury, though in law it may bar recovery. At present we are dealing only with the question of sufficiency of evidence to sustain the finding of primary negligence and its causal connection with the injury. We cannot without confusion consider both these questions and also the question of contributory negligence at the same time. We therefore hold, so far, that the evidence was sufficient to sustain the findings of primary negligence of the defendant, and causal connection between it and the injury.

Although there was primary negligence and such causal connection, plaintiff may not recover if the deceased's own negligence caused his injury and the jury so finds. The plaintiff asserts that in view of the fact that the jury passed upon the question of contributory negligence, and found the absence thereof, this court is precluded from inquiring into that issue, by reason of section 6 of article 23 of the Constitution of this state, which provides that the defense of contributory negligence shall in all cases whatsoever be a question of fact and shall at all times be left to the jury. The plaintiff cites former decisions of this court, and of the Supreme Court of the United States, to the effect that the aforesaid constitutional provision makes the jury the judges of the law as well as the fact, in so far as contributory negligence is concerned. The literal construction of that constitutional provision which was followed in those cases has been explained in the recent decision of this court in Miller v. Price, 168 Okla. 452, 33 P. (2d) 624, wherein it was announced that where the defendant pleads contributory negligence but introduces no evidence thereof, and a review of all the evidence and the inferences reasonably deducible therefrom do not warrant the conclusion that plaintiff was contributorily negligent, it is error to submit the issue of contributory negligence to the jury. That decision held that mere pleading contributory negligence was not sufficient to invoke the constitutional provision, in the absence of some evidence in support thereof, either from the plaintiff or the defendant. In other words, the "defense" had simply not been presented. It did not hold that in a case where there is some evidence of contributory negligence, or where there is such evidence and also some facts which might reasonably tend to negative contributory negligence or combat the inference thereof, this court would review the evidence to determine the sufficiency of such evidence to sustain the finding, either of the presence or absence of contributory negligence. In such a case the constitutional provision is absolutely binding, and by such provision

"It was no doubt intended that the question of the contributory negligence of the injured party under such circumstances should at all times be a jury matter and that the court should be precluded from weighing such evidence. if any." Miller v. Price, supra, 33 P. (2d) at 630.

In the instant case the jury decided that contributory negligence had not been proved. This finding by the jury on this issue, in view of the constitutional provision, precludes this court from weighing the evidence and concluding as a matter of law that decedent's contributory negligence, rather than the primary negligence of defendant, was the proximate cause of said injury.

The court gave the jury a very complete set of instructions on the doctrine of imputed negligence. This was at the request of the defendant, though certain instructions on this subject which were requested by defendant were refused. The defendant assigns such refusal, and the giving of the instructions, as error. Defendant finds no fault with the abstract principles of law announced in the instructions, but contends that no instructions were proper under this subject except those which would have announced that deceased and the driver of the car were on a mission of mutual interest, a joint enterprise, and that deceased had the right of control over the movements of the car and the conduct of the driver. We have thoroughly considered the evidence in this connection. We do not find any indication in the record which would have compelled a finding that deceased had or exercised the right of control of the car. The fact that the intention was to later go into deceased's territory to make collections, with which the driver was not concerned, and with which Pierce was not concerned, would not of itself necessitate a finding of imputed negligence, even if deceased had suggested the general route to be taken. See St. L. & S. F. Ry. Co. v. Bell, 58 Okla. 84, 159 P. 336. Probably the instructions were more favorable to defendant than the evidence justified.

We next consider the effect of our statutes of limitations. The period of limitation normally applicable in this state to this kind of action is two years. Section 570, O. S. 1931. The deceased was killed on January 11, 1929, and the present suit was filed on June 13, 1932, therefore the action was barred unless it was saved by the provisions of section 106, O. S. 1931, which provides in substance that if an action is commenced within the original period of limitation and then, after the expiration of such original period, a judgment for plaintiff is reversed or if the plaintiff fail in such action otherwise than upon the merits, the plaintiff or his representatives may commence a new action within one year after such reversal or failure.

An action was started in the district court of Tulsa county on May 9, 1929, removed to the federal court and there dismissed without prejudice on July 13, 1929, before the two-year limitation had run. The filing and dismissal of that action had no effect one way or the other on the present question. U. S. Fire Ins. Co. v. Swyden, 175 Okla. 475, 53 P. (2d) 284.

Another action was started in the district court of Osage county on July 24, 1929. That, as well as the former action, was by the widow on behalf of herself and the minor children under section 571, O. S. 1931. No administrator had as yet been appointed. That action was against the present defendant, and also against the engineer and roadmaster personally. It was removed to the federal court and was then remanded to the district court of Osage county (Warren v. Midland Valley R. R. Co., 36 F. (2d) 828) and there tried. The court sustained a demurrer to the evidence on behalf of the roadmaster, on the ground that the statutory duty of the railroad company to maintain the crossing was nondelegable and that the duty owing by the roadmaster was to the railroad company only and was not to the public. The verdict was in favor of the engineer. This eliminated the question of negligence in the operation of the train and, as stated heretofore, the present action is not founded upon such negligence, and the jury was specifically instructed to exclude consideration of negligence in that respect. In that trial the jury returned a verdict in favor of plaintiff and against the defendant railroad company and the trial court subsequently sustained the defendant's motion for new trial and set the judgment aside. Thereupon the defendant again removed the action to the federal court, where it was pending and undisposed of on January 11,

1931, which is the date after which the two-year statute of limitations would have barred recovery if no action had been pending. First Nat. Bank v. Drew, 69 Okla. 59, 169 P. 1092. On June 5, 1931, the plaintiff filed an amended petition in the federal court. This amended petition stated substantially the same cause of action as the original petition, and did not add any allegations of occurrences happening since the filing of the original petition which would create a new cause of action, nor did it subtract from the original petition any allegations resulting in any changes which would be material to this question, hence it is unnecessary to discuss the argument advanced in this connection by defendant. See discussion and distinction in Westchester Fire Ins. Co. v. Federal Nat. Bank, 135 Okla. 47, 273 P. 889. The defendant filed a motion for judgment on the pleadings, and the plaintiff, with permission of court, dismissed the action without prejudice on June 23, 1931.

Since the proceedings in the above action in the federal court, after removal thereto, were a mere continuance of the cause as it was started in the state court (Removal Act, Judicial Code, sec. 38), the plaintiff then had one year from the date of such dismissal, or until June 23, 1932, to file a new action under section 106, O. S. 1931 (190, St. 1921). If an action is started in the state court within the period of limitations, and then is removed to the federal court by the defendant, a dismissal without prejudice or any failure otherwise than on the merits, after running of limitations, will serve as the basis for the filing of a new action within one year thereafter in the state court. In fact, we have gone even further than that, for in Edmison v. Crutsinger, 165 Okla. 252, 25 P. (2d) 1103, we held:

"Where an action is commenced in due time in a United States District Court within this state, and is finally dismissed in that court for want of jurisdiction and without a determination of its merits, and at the time of dismissal, the statute of limitations having run against the action in the state court, the plaintiff may, under section 190, C. O. S. 1921, commence a new action in the proper state court at any time within one year after the dismissal of the action in the federal court."

The present action was filed on June 13, 1932, within one year following the preceding action's dismissal on June 23, 1931, and no other action had been filed and dismissed in the meantime.

The defendant contends, however, that the present action is not the same as the former

action, that therefore the former action does not save the running of limitations. Defendant points out that the former action was by the widow, while this one is by the administrator; that no administrator had been appointed when the former action was dismissed; that if in the former action the widow had alleged the existence of an administrator she would have pleaded herself out of court, as being without capacity to sue; that therefore the fact which plaintiff was bound to prove in this action (his appointment) would have defeated the other action, and for that reason they are not the same causes of action.

Taking it as true that the widow could not have maintained the former action if she had not alleged that no administrator had been appointed, or if she had failed to prove such negative fact (C., R. I. & P. Ry. Co. v. Brooks, 57 Okla. 163, 156 P. 362), does it follow that a new cause of action has now been stated? We think that in all substantial essentials pertinent to the cause of action itself, as distinguished from the question of the proper party to bring the action, the present action is the same as the former. The change is merely a substitution of parties, from the beneficiary to the representative of the beneficiary. The change is in form rather than in substance. Regardless of whether the action is brought under section 570 or section 571, O. S. 1931, which sections are related, the beneficiaries are the same, the same facts prove or disprove all of the issues' and the wrongful death, the same defenses exist, the merits of the action are in all substantial respects the same. The same reasoning applies as when the personal representative is substituted for the widow, by amendment, after the original period of limitation has run. In Motsenbocker v. Shawnee G. & E. Co., 49 Okla. 304, 152 P. 82, we reviewed the authorities extensively on that question and held that the mere substitution did not change the cause of action so as to bar recovery under the statutes of limitation. It was there pointed out that in either case the amount recovered went to the same parties, regardless of any difference in the measure of damages, and that such an objection as is here lodged was at odds with the purpose of the statute. We also said in that case that we ought not to adopt a policy that would defeat substantial justice, by indulging in fine-spun theories woven around technical rules of procedure and defects in pleadings that go to the form rather than the substance. See, also, Atlas Assurance Co. of London v. Fairchild, 171 Okla. 609, 43 P. (2d) 482;

M., K. & T. Ry. Co. v. Lenahan, 39 Okla. 283, 135 P. 383; Mott v. Long, 90 Kan. 110, 132 P. 998; Nashville, etc., Ry. Co. v. Anderson, 134 Tenn. 666, 185 S. W. 677; Bowman v. Southern Pacific Co. (Cal.) 204 P. 403; Whitson v. Tenn. C. Ry. Co., 163 Tenn. 35, 40 S. W (2d) 306; M., K. & T. Ry. Co. v. Wulf, 226 U. S. 570, 33 Sup. Ct. 135, 57 L. Ed. 355.

The defendant further contends that because the engineer and roadmaster were also defendants in the former action, and are not defendants in this action, the causes of action are different. The defendants in the former action were not sued jointly, but jointly and severally. Plaintiff could have dismissed as to either. The rule is that while the second suit must be for the same cause of action as the first suit, it need not necessarily be against all of the defendants in the first suit unless all were necessary parties to the first suit. Stevens v. Wood, 17 Ga. App. 756, 88 S. E. 413.

This brings up the contention of the defendant that the trial court's sustaining of the roadmaster's demurrer in the former case, and the verdict in favor of the engineer in that case, form a complete acquittance of the defendant in this case, by reason of the principle of res adjudicata. It must be remembered that the roadmaster's demurrer was sustained, not because of any finding that the crossing was not defective, but because of an absence of a duty owing by him to the public under the statute. No personal negligence of his was alleged. The recovery by reason of negligence in maintenance of the crossing is not by reason of the rule of respondeat superior, but because the duty is nondelegable. This particular contention was expressly denied in Texas Co. v. Alred, 167 Okla. 128, 28 P. (2d) 556; also Spruce v. C., R. I. & P. Ry. Co., 139 Okla. 123, 281 P. 586, and St. L. & S. F. Ry. Co. v. Simmons, 116 Okla. 126, 242 P. 151. In particular, see C., R. I. & P. Ry. Co. v. Witt, 144 Okla. 246, 291 P. 59. To exonerate one defendant who did not owe a duty cannot be an exoneration of the defendant who did owe the duty. As to the engineer: it will be remembered that in the prior action, where the engineer prevailed, the railroad company did not prevail. A verdict was rendered against it, but the trial court subsequently granted a new trial. The verdict of the jury in that case evidently established the fact that no negligence existed in the manner of operation of the train, but by the same jury it was decided that negligence did exist in the manner of maintenance of the crossing. The result is that

the question of negligence in the operation of the train thereby was eliminated from future judicial determination, but negligence in the maintenance of the crossing did not thereby become eliminated. As stated in the beginning, the issue of negligent operation of the train was not in the present action at all, and the jury was instructed to that effect. It follows, therefore, that the verdict in favor of the engineer did not become res judicata on the question of negligence in maintenance of the crossing.

There are two propositions advanced by defendant which it is unnecessary to discuss. However, we have thoroughly considered both of them; neither involves any new questions of law. One of those propositions was affiliated with the preceding proposition. The other involved the question of whether the amended petition stated a cause of action in the federal court, so as to serve as a basis for invoking section 106, supra, in the present action. We hold that under the facts of this particular case, the amended petition did state a cause of action, and we are not prepared to say that had the occasion arisen, the federal court, on the amended petition, would have held otherwise than it had already held, when it overruled defendant's demurrer or motion for judgment on the pleadings as to the original petition.

Finally, the defendant complains about alleged misconduct of plaintiff's attorney during the trial of the case. Mainly, the misconduct complained of consists of remarks of the attorney in the presence of the jury. Our reading of the entire record reveals that the trial was very bitterly and hotly contested, and very evidently the counsel on both sides were somewhat on edge. The trial court repeatedly admonished them to desist from their personal bickering, and instructed the jury to pay no attention to it, but to form their decision on the evidence and the law. One strong impression we gained from the record is that the then counsel for defendant was the major offender in that respect, and in many instances, by improper remarks of his own, incited a like rejoinder from his opponent; and while two wrongs do not make a right, the inciting party is not in a position to complain. Anyway, the nature of the remarks would not justify reversal of this judgment.

Finding no substantial error in the record, the judgment is affirmed.

McNEILL, C. J., OSBORN, V. C. J., and RILEY, BAYLESS, BUSBY, and WELCH, JJ., concur. GIBSON, J., dissents. CORN, J., absent.